13-4794
Heng v. Lynch

BIA
Videla, IJ
A087 592 715

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 3rd day of December, two thousand fifteen.

PRESENT:
> JOSÉ A. CABRANES,
> PETER W. HALL,
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges.*

_____

HUANG HENG,
> *Petitioner,*

v.                                          13-4794
                                            NAC
LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,[1]
> *Respondent.*

_____

FOR PETITIONER:          Gary J. Yerman, New York, NY.

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Loretta E. Lynch is automatically substituted for former Attorney General Eric H. Holder, Jr.

**FOR RESPONDENT:** Stuart F. Delery, Assistant Attorney General; Jennifer Williams, Senior Litigation Counsel; Lance L. Jolley, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Huang Heng, a native and citizen of the People's Republic of China, seeks review of a December 4, 2013, decision of the BIA affirming the August 13, 2012, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Huang Heng*, No. A087 592 715 (B.I.A. Dec. 4, 2013), *aff'g* No. A087 592 715 (Immig. Ct. N.Y. City Aug. 13, 2012). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision, including the portions not explicitly discussed by the BIA. *Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). The applicable standards of review are well

established.  *See* 8 U.S.C. § 1252(b)(4)(B); *Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

For asylum applications like Heng's, governed by the REAL ID Act of 2005, the agency may, "[c]onsidering the totality of the circumstances," base a credibility finding on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of his account, and inconsistencies in his statements, without regard to whether they go "to the heart of the applicant's claim," so long as they reasonably support an inference that the applicant is not credible.  8 U.S.C. § 1158(b)(1)(B)(iii); *see also Xiu Xia Lin v. Mukasey,* 534 F.3d 162, 167 (2d Cir. 2008) (per curiam).  We defer to an IJ's credibility finding "unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make" such a ruling.  *Xiu Xia Lin*, 534 F.3d at 167.  Here, the agency reasonably based its adverse credibility finding on inconsistencies between Heng's credible fear interview and testimony before the IJ.

Heng testified before the IJ that in February 2009, Chinese police arrested him when he was practicing Falun Gong at the home of a fellow practitioner.  He was released after twelve days.  Upon release he went home and, in the

3

months that followed, the police often came to his home to ask him if he could provide information about other Falun Gong members. In April 2009, he hosted a gathering of Falun Gong practitioners at his home. The police arrived, and Heng fled to a friend's house, where he stayed for about two months until he left for the United States. While he was staying at his friend's home, he learned that on the day he fled, the police arrested his parents.

In contrast, in his credible fear interview, Heng stated that he was arrested in February 2009 at his own home, and that after he was released, he went directly to his friend's house, and then left for the United States ten days later. When asked if anything else happened to him after the initial arrest, Heng stated, "Nothing because I left the country after my release." Certified Administrative Record at 640. He also stated that after he left China, the police detained his parents for one week.

During proceedings, the IJ asked Heng if he understood the interpreter at his interview, and Heng answered that he did. The IJ then took Heng through the inconsistencies between his credible fear interview and his testimony point by point, asking Heng to explain why his answers were

4

different.  Heng first stated that his prior answers must have been mistranslated, and then answered that he did not know.

When discrepancies arise from an applicant's statements in a credible fear interview, we closely examine the interview report to ensure that it represents a "sufficiently accurate record" to be considered to determine whether the applicant is credible.  *Ming Zhang v. Holder*, 585 F.3d 715, 722-25 (2d Cir. 2009) (quoting *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179-80 (2d Cir. 2004) (discussing factors for assessing accuracy)).  Heng does not argue that his credible fear interview was unreliable.  Further, the interview bears sufficient indicia of reliability because: proceedings were memorialized in a typewritten document setting forth the questions and responses; the interview was conducted with the aid of an interpreter whom Heng testified he had understood; and Heng was asked questions clearly designed to elicit a basis for asylum.  *See id*. at 725. During the merits hearing, the IJ read to Heng portions of the credible fear interview, and Heng initially confirmed that the interview was accurate; it was not until the IJ pointed out the inconsistencies that Heng suggested it had been mistranslated.  The agency reasonably declined to

5

accept this explanation. *See Majidi v. Gonzales*, 430 F.3d 77, 80-81 (2d Cir. 2005).

The REAL ID Act allows the agency to base a credibility finding on any inconsistency, without regard to whether it goes "to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). In this case, however, the agency identified material inconsistencies in a part of Heng's claim "that served as an example of the very persecution from which he sought asylum." *Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 295 (2d Cir. 2006)(internal quotation marks omitted). Accordingly, substantial evidence supports the agency's finding. 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 167. Because the only evidence of a threat to Heng's life or freedom depended upon his credibility, the finding necessarily precludes success on Heng's claims for asylum, withholding of removal, and CAT relief. *See Paul v. Gonzales*, 444 F.3d 148, 156-57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DISMISSED as moot. Any pending request for oral argument in this petition is DENIED in accordance with

Federal Rule of Appellate Procedure 34(a)(2), and Second Circuit Local Rule 34.1(b).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk